William R. MURRAY, Plaintiff-Appellant,

v.

AMOCO OIL COMPANY, a corporation,
Defendant-Appellee.

No. 76–2284
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 12, 1976.

Wm. R. Murray, pro se.

Robert B. Harwood, Jr., Tuscaloosa, Ala.,
for defendant-appellee.

Before COLEMAN, GOLDBERG and
GEE, Circuit Judges.

* Rule 18, 5 Cir., see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

PER CURIAM:

Amoco Oil Co. extended open end consumer credit to William R. Murray. Murray brought this suit against Amoco, claiming that Amoco failed to send him periodic statements as required by the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.*, and that in turning his account over to a collection agency Amoco libeled him. The district court dismissed the complaint. We reverse.

### I.

The trouble between Amoco and Murray, possessor of an Amoco credit card, originated in July 1975. Murray changed his address from "Star Route, Northport, Alabama 35476" to "Murray Lane, Northport, Alabama 35476." He properly notified Amoco of the change. For about two weeks, however, the United States Postal Service refused to recognize Murray's new address. Amoco may have sent Murray his monthly statement during that two week period; at any rate Murray did not receive any July billing. Nor did he pay the balance due.

Thereafter, Amoco did not send Murray any monthly statements. Instead, it sent his statement to a North Carolina address unknown to Murray. Murray characterizes the address as "some sort of Defendant-sponsored clearinghouse," and Amoco does not dispute that characterization.

At least three statements sent to North Carolina included new charges.[1] In addition, Amoco assessed finance charges for the months in which it sent Murray no statements.

Amoco eventually reopened its lines of communication with Murray on December 16, 1975, sending him a form letter that Murray describes as a "nasty notice." The notice advised Murray that he was in default and threatened to place the account with an attorney or collection agency. The notice listed the "minimum payment due"

as $50.86, which was apparently the entire amount of Murray's alleged indebtedness including finance charges. Amoco did not send Murray a statement or any itemization of the charges.

Murray immediately wrote Amoco saying that he was unaware of any indebtedness but that upon receipt of a statement he would pay whatever was due. In the ensuing correspondence Amoco sent documentation of the charges, and Murray contested only that portion representing finance charges. Reconciliation efforts failed and Amoco turned Murray's account over to a national collection agency.

After unwittingly accepting the collection agency's collect call from Pennsylvania, Murray filed this suit. He claims that Amoco violated the Consumer Credit Protection Act (CCPA) and that Amoco libeled him. In the CCPA claim he seeks the statutory minimum of $100 damages, plus $250 attorneys fees. *See* 15 U.S.C. § 1640(a)(2)(A). In the libel claim he seeks $15,000 compensatory damages and $45,000 punitive damages.[2]

### II.

Our beginning point in analyzing the CCPA claim is the statute itself:

*Statement required with each billing cycle*

(b) The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable:

(1) The outstanding balance in the account at the beginning of the statement period.

(2) The amount and date of each extension of credit during the period and a

---

1. These were the statements for October, November and December 1975.

2. Murray also asks that Amoco be enjoined from using a collection agency to press him for collection until the court determines the amount of indebtedness.

brief identification on or accompanying the statement of each extension of credit in a form prescribed by regulations of the Board sufficient to enable the obligor to identify the transaction, or relate it to copies of sales vouchers or similar instruments previously furnished. . . .

15 U.S.C. § 1637(b)(1), (2).[3]

Murray's complaint alleges that Amoco was a creditor under an open end consumer credit account and that Amoco failed to send him the required statements for several months in which there was an outstanding balance and with respect to which a finance charge was imposed.[4] On this motion to dismiss we must of course take Murray's allegations as true, and thus on the face of things Murray has clearly stated a claim under the statute.[5]

Amoco answers this contention by invoking the statute's implementing regulations. *See* Regulations Z, 12 C.F.R. §§ 226.1 *et seq.* Section 226.7(b)(1) provides:

> Except in the case of an account which the creditor deems to be uncollectible or with respect to which delinquency collection procedures have been instituted, the creditor of any open end credit account

shall mail or deliver to the customer, for each billing cycle at the end of which there is an outstanding undisputed debit or credit balance in excess of $1 in that account or with respect to which a finance charge is imposed, a statement or statements which the customer may retain, setting forth . . . each of the following items . . ..

Amoco contends that it was not required to send Murray statements for the months of August through December because "delinquency collection procedures" had been instituted. Amoco urges a liberal construction of that phrase.

We need not, however, determine the exact scope of the regulation's "delinquency" exception. On this dismissal motion the only facts of which we can take cognizance are those alleged in the complaint. The complaint contains no hint of any "delinquency collection procedures." Amoco's assertion in its brief that it had instituted such procedures has absolutely no support in our very limited record. Amoco's contention is premature.[6]

The district court erred in dismissing Murray's CCPA claim.

---

3. The statute also requires the statement to include a variety of additional information. *See* 15 U.S.C. § 1637(b)(3)–(11).

4. There was an outstanding balance for the months of August through December 1975, finance charges were apparently imposed for each of those months, and other new charges were added for October, November and December. Amoco sent no statements for any of those months. Thus Murray alleged multiple violations, any one of which would be sufficient to support his claim. Murray would of course be limited to one recovery. *See* 15 U.S.C. § 1640(g); *Turner v. Firestone Tire & Rubber Co.,* 537 F.2d 1296 (5th Cir. 1976).

5. In dismissing the complaint the district court attributed Murray's failure to receive the statement to "the customer having provided the creditor with an address that was not recognized as a point of delivery by the U.S. Postal Service." Even if that observation were true as to the July 1975 billing (an issue we cannot resolve on a motion to dismiss), it is not true as to the August through December billings.

6. We also call to the parties' attention 12 C.F.R. § 226.7(b)(2):

> If the terms of the open end credit plan provide a time period within which the customer may repay any portion of the new balance without incurring an additional finance charge, late payment charge, or other charge, no such charge may be imposed with respect to any portion of such new balance unless the periodic statement disclosing the new balance is mailed or delivered to the customer at least 14 days prior to the date specified in the statement as being the date by which payment of the new balance must be made in order to avoid the imposition of that finance charge or late payment charge.
>
> . . .

The section contains no exception for accounts with respect to which delinquency collection procedures have been instituted, and at least on its face the section appears applicable to Amoco's dealings with Murray in August through December. If at trial Amoco intends to rely on the "delinquency" exception to 12 C.F.R. § 226.7(b)(1), it will have to demonstrate the inapplicability of 12 C.F.R. § 226.7(b)(2), an issue upon which we express no view.

### III.

The district court's primary reason for dismissing Murray's libel claim was that it did not satisfy the jurisdictional amount requirement. To establish diversity jurisdiction under 28 U.S.C. § 1332, the amount in controversy must exceed $10,000. Although Murray sought $15,000 compensatory damages and $45,000 punitive damages, the district court concluded that "this is one of the rare cases where it is clear beyond peradventure that [$10,000] is not involved."

■ We need not pass on the district court's resolution of the jurisdictional amount issue. We have reinstituted the CCPA claim, which has an independent jurisdictional base. *See* 15 U.S.C. § 1640(e). Accordingly, the district court should address the propriety of exercising pendent jurisdiction over the libel claim.

In dismissing the libel claim the district court also commented that "it is extremely doubtful that plaintiff has a cause of action for libel." The court noted that Murray does not deny his indebtedness to Amoco. At this stage of the litigation, however, we do not know what statement Amoco made to the collection agency. Amoco may have confined itself to stating that Murray owed money he had not paid, but it also may have gone further. We cannot resolve Murray's libel claim on the basis of "barebone pleadings." [7]

The district court's decision is

REVERSED.

---

**7.** Murray relies upon Ala. Code title 7, § 910 in arguing that his libel allegations are sufficient to withstand a dismissal motion. That section provides:

> *Libel or slander; defamatory matter.*—In an action for libel or slander, it shall be sufficient to state, generally, that the defamatory matter was published or spoken of the plaintiff; and if the allegation be denied, the plaintiff must prove, on the trial, the fact showing that the defamatory matter was published or spoken of him.

We conclude that Murray's allegations are sufficient under the federal standard. *See* Fed. R.Civ.P. 8(a). We therefore need not decide whether a state's more liberal requirements for pleading libel would be applicable to a federal court adjudicating such a state law claim. *Cf. Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).