Jeffrey STRANGE, Plaintiff–Appellant,

v.

MONOGRAM CREDIT CARD BANK OF
GEORGIA, Defendant–Appellee.

No. 96–2903.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 18, 1997.

Decided Nov. 19, 1997.

Rade Radjenovich (argued), Strange & Associates, Wilmette, IL, for Plaintiff–Appellant.

Scott C. Frost (argued), Alan I. Ehrenberg, Blatt, Hasenmiller, Leibsker, Moore & Pellettieri, Chicago, IL, for Defendant–Appellee.

Before ESCHBACH, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

It can be annoying, difficult, and ultimately expensive for a consumer to straighten out errors in a credit card statement, as Jeffrey Strange found out when he purchased a window at Home Depot, Inc., for $346.21. He charged the purchase to his Home Depot credit card, which had been issued by the Monogram Credit Card Bank ("Monogram"). Strange soon discovered that the size of the window had been mislabeled and that he therefore could not use it. He returned it to the Home Depot store from which he had obtained it, and, he thought, received a credit for the return. Wrong he was. When his monthly credit card statement arrived in November 1994, he discovered that his account had not been credited for the return. Following the instructions on the bill, Strange wrote to the address listed requesting that his account be corrected. Neither Home Depot nor Monogram responded to his letter. When his next monthly statement again did not reflect any credit for the returned window, Strange wrote a second letter, again asking that the billing error be corrected. Once again, his efforts were to no avail: neither company responded, and subsequent monthly billing statements continued to reflect the billing error of $346.21.

Strange ultimately filed suit against both Home Depot and Monogram for violations of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* He alleged that both companies were liable for failing promptly to credit the purchase price of the returned window to his account in violation of § 1666(c) and (d)

(Count I), and that they were also liable for not acknowledging receipt of the billing error notices within 30 days of receiving them, for failing to investigate and resolve the billing error dispute within two complete billing cycles or 90 days, and for continuing to attempt collection of the amount in dispute and to impose finance charges on the disputed balance, all in violation of § 1666 (Count II). Each count requested recovery "for each and every violation of the Act." The complaint also requested that the court "[a]ward statutory damages in the amount of twice the finance charge not to exceed $1000 in accordance with 15 U.S.C. § 1640(a)(2)" and that it award costs and reasonable attorneys' fees under § 1640.

Both Strange and Home Depot moved for summary judgment. The district court denied Strange's motion with respect to Home Depot but granted it with respect to Monogram, which the court found had violated the TILA by failing to send Strange a written explanation of the billing error. The court granted Home Depot's summary judgment motion because it was not a "creditor" under the terms of the statute. It ordered damages for Strange in the amount of $1,000, the statutory maximum under § 1640.

Not satisfied, Strange (through another lawyer in the office) filed a petition requesting $21,743.75 in attorneys' fees for his lawyers, Jeffrey Strange & Associates. Monogram opposed the petition, claiming that it was excessive and that the proper award for the credit dispute under the TILA was $100—an amount that made Strange's fee request some two hundred times the amount in controversy. In keeping with this argument, Monogram also filed a Motion for Reconsideration of Statutory Damages Award, requesting that the statutory penalty be reduced to $100. In response to that motion, the court reduced the award for Strange to $54.72, twice the erroneously billed finance charge of $27.36.

The district court rejected Strange's request for the full $21,743.75 in attorneys' fees, explaining its decision as follows:

I granted Mr. Strange summary judgment on his claim against Monogram, but awarded Mr. Strange a judgment of only $54.72. Had he properly researched the issues in this lawsuit when he first filed his complaint, Mr. Strange would have known that this amount would be all he was awarded. Even if there were some question as to whether he was entitled to multiple recoveries for multiple violations, Mr. Strange pled only six violations of the TILA. Thus at most Mr. Strange would only be entitled to $328.32. It was not reasonable for Mr. Strange to incur over $21,000 in attorney's fees to prosecute a claim worth, at most, $328.32.... Here I find that it was absurd for Mr. Strange to spend 123 hours to establish a $54 (or even $328) claim.

....The problem with Mr. Strange's fee request, however, is not that his attorney's billing rate of $175/hr is too high, but that the amount of time he spent on this case was excessive. I therefore grant his fee request only for the reduced amount of $3,000....

Strange argues now that the court erred both in reducing his award to $54.72 and in cutting his attorneys' fees so substantially.

 District courts have wide latitude in determining attorneys' fee awards, and our review of these decisions is "a highly deferential abuse of discretion standard." *Estate of Borst v. O'Brien*, 979 F.2d 511, 514 (7th Cir.1992). Recognizing the problems this poses for him, Strange argues that the court did not use the proper analysis in determining the award, and in that way abused its discretion. It failed, he believes, to follow the method the Supreme Court established in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), under which the court begins with "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433, 103 S.Ct. at 1939. See also *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 944–45, 103 L.Ed.2d 67 (1989). (This figure would normally reflect the twelve factors to which the Court referred in the *Hensley* opinion, *id.* at 430 n. 3, 103 S.Ct. at 1938 n. 3, which originated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974).) The *Hensley* Court went on to say that the district court "should exclude

from this initial fee calculation hours that were not 'reasonably expended.' ... Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary...." 461 U.S. at 434, 103 S.Ct. at 1939–40.

■ *Hensley* reflects the fact that attorneys' fees are normally determined using the "lodestar" method. See, *e.g.*, *Blanchard*, 489 U.S. at 94, 109 S.Ct. at 944–45; *Estate of Borst*, 979 F.2d at 515. The fee claimant bears the burden of substantiating the hours worked and the rate claimed. *Estate of Borst*, 979 F.2d at 515. Once he has done so and submitted a lodestar, the district court may increase or decrease the amount in light of the *Hensley* factors, which include the time and labor required, skill needed, amount involved and results obtained, time limitations imposed by the case, experience, and reputation and ability of the lawyers. *Id.* A "concise but clear explanation" should accompany any modification by the court of the submitted lodestar. *Id.* at 515–16. The court may not cut down the requested fees by an arbitrary amount just because they seem excessive. See *Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir.1986).

In this case, the district court considered both the hourly rate charged and the number of hours expended. Judge Bucklo explained why she found the number of hours requested to be unreasonable, in light of the stakes involved in the litigation and the time and labor that reasonably should have been expended. She also took into account both the results Strange actually obtained and the maximum amount he could have hoped for, given his demands and the statutory framework. This approach to a fee award was expressly approved by the Supreme Court in *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992). While it was brief, her explanation for the reduction she ordered was the kind of "concise but clear" statement *Estate of Borst* required; it was not an unfounded, arbitrary reduction based on the court's subjective view of what might be excessive. We therefore find no abuse of discretion in either the analytical framework the court used or her ultimate decision on the amount of fees Strange was to receive.

■ Strange also challenges the court's conclusion that he was entitled only to twice the amount of the finance charge assessed by Monogram, rather than the minimum award of $100 he claims the TILA requires. We review this decision *de novo*, as it deals with a question of statutory interpretation. See *Jenkins v. Heintz*, 25 F.3d 536, 538 (7th Cir.1994). Section 1640 provides the measure of damages for violations of the TILA's requirements for credit transactions. It specifies that:

(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of-

(1) any actual damage sustained by such person as a result of the failure;

(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, (ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000, or (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2,000....

15 U.S.C. § 1640 (1996). The district court found that Monogram had failed to send Strange a written explanation regarding the billing error. Monogram's action violated § 1666, which governs such errors. Because § 1666 is found in part D of the relevant subchapter, the language quoted above governs the award of damages here.

< header omitted>

■ Monogram concedes that, under § 1640(a)(2)(A)(i), Strange is entitled to the minimum award of $100. In its Motion for Reconsideration of Statutory Damages Award it challenged only the district court's decision to award the maximum award of $1,000. It never argued that the award should be only twice the amount of the finance charges assessed against Strange, and before this court it again conceded that the court erred in awarding Strange less than the $100 statutory minimum. Even though Monogram chose not to fight the point, it is notable that the district court interpreted the statute otherwise. Because this is a pure question of law on a matter of considerable commercial interest, we think it best to decide now which is the proper interpretation of the statute. As the statute now reads, § 1640(a)(2)(A)(ii) states that "the liability under this subparagraph shall not be less than $100 nor greater than $1,000;" subsection (A)(i) is silent on the question, and subsection (A)(iii) establishes a floor of $200 and a ceiling of $2,000. One could argue that § 1640(a)(2)(A)(i) and (ii) are separate "subparagraphs," and that "liability under this subparagraph" means only liability under § 1640(a)(2)(A)(ii). Although that reading has a certain appeal given the fact that subsection (ii) is the only one of the three subparts to mention the $100/$1,000 amounts, the history of this part of the statute suggests that such a reading has its own problems. Until 1995, § 1640(a)(2)(A) had only two subsections, the present (i) and (ii). Courts uniformly interpreted the final clause, which established the $100 minimum and the $1,000 maximum, as applying to both (A)(i) and (A)(ii). See, *e.g., Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir.1983) (plaintiff's recovery under § 1640(a)(2)(A)(i) capped at statutory limit of $1,000 where doubled finance charges totaled $2,348.70); *Pendleton v. American Title Brokers, Inc.*, 754 F.Supp. 860, 864 (S.D.Ala. 1991) (plaintiff's recovery under § 1640(a)(2)(A)(i) boosted to statutory minimum of $100 where doubled finance charges were less than that amount). It was the 1995 addition of sub-subsection (A)(iii) that introduced the ambiguity with which we are now confronted. In our view, the 1995

amendment was designed simply to establish a more generous minimum and maximum for certain secured transactions, without changing the general rule on minimum and maximum damage awards for the other two parts of § 1640(a)(2)(A). We therefore conclude that the "subparagraph" mentioned in § 1640(a)(2)(A)(ii) continues to encompass what is now codified as subparts (A)(i) and (A)(ii), not just subpart (A)(ii). Strange was therefore entitled to receive the $100 minimum for the billing error in his case, as Monogram now concedes.

We accordingly AFFIRM the district court's award of attorneys' fees, and we REVERSE its award of $54.72 and REMAND for entry of judgment for Strange in the amount of $100. Each side is to bear its own costs on appeal.