**Peter BELMONT, Plaintiff,**

v.

**ASSOCIATES NATIONAL BANK (DELAWARE), Defendant.**

**Civil Action No. 99–CV–3445 (DGT).**

United States District Court,
E.D. New York.

Sept. 12, 2002.

Peter Belmont, Brooklyn, NY, pro se.

Kenneth L. Gellhaus, McNamee, Lochner, Titus & Williams, P.C., Albany, NY, Arthur M. Tasker, Forest Hills, NY, for Defendant.

## MEMORANDUM AND ORDER

TRAGER, District Judge.

Plaintiff Peter Belmont again brings a motion under Rules 59(e) and 60(b)(1) of the Federal Rules of Civil Procedure ("FRCP") and Local Rule 6.3, to revisit one aspect of the August 18, 2000 Memorandum and Order in which Belmont was awarded $1,000 in statutory damages for defendant's violations of the Truth In Lending Act ("TILA") and costs, but was denied attorneys' fees. *See Belmont v. Associates Nat. Bank (Delaware)*, 119 F.Supp.2d 149, 168 (E.D.N.Y.2000). In addition, defendant was enjoined from collecting the first $50 of any amount later found to be due. *See id.*

## Background

Briefly, the facts of this case are that defendant improperly billed Belmont for charges made on his son's credit card, then—as required by § 1666(a)(3)(A) of TILA—failed to properly respond within 30 days after Belmont notified it of the error. *See id.* at 162–63. Defendant also failed to comply with § 1666(a)(3)(B)'s requirement that it make appropriate corrections to Belmont's account or send a written explanation within two billing cycles of the reasons why it believed the account was correctly computed in the statement. *See id.* In addition, defendant twice improperly threatened to make an adverse credit report while Belmont's Notice of Billing Error remained unresolved, and made one adverse credit report regarding Belmont in violation of § 1666a(a). *See id.* at 163.

In all, the August 18, 2000 Memorandum and Order noted five separate violations of TILA. However, Belmont was awarded only a single recovery of $1,000, based on a TILA provision that entitles a person to only a single recovery even for multiple violations. *See id.* at 165 n. 11 (citing 15 U.S.C. § 1640(g) and *Strange v. Monogram Credit Card Bank of Georgia*, 129 F.3d 943, 947 (7th Cir.1997)). This holding and the statute will be examined in detail below.

Although the August 18, 2000 Memorandum and Order directed the Clerk of the Court to enter judgment accordingly and close the case, no final judgment was entered until March 6, 2002. The reason for the delay is not entirely clear. However, in the year and a half after August 18, 2000 Memorandum and Order, the parties engaged in a dispute regarding injunctive relief and defendant's adverse credit reporting. These issues were resolved in February 2002.

Following the August 18, 2000 Memorandum and Order, Belmont timely filed a motion for reconsideration under Rules 59(e) and 60(b)(1) of the FRCP and Local Rule 6.3 only on the question of attorneys' fees. This motion was denied by the October 31, 2000 Order.

In a November 9, 2001 letter, Belmont requested leave to reargue whether his recovery should be limited to a single recovery for multiple violations of TILA. This letter was construed as a motion under Local Rule 6.3, and was denied in the January 14, 2002 Memorandum and Order for being untimely. The January 14, 2002 Memorandum and Order also noted that Belmont's motion appeared to lack merit, citing a Fifth Circuit case, *Murray v. Amoco Oil Co.*, 539 F.2d 1385, 1387 n. 4 (5th Cir.1976).

As noted above, final judgment was entered on March 6, 2002 following resolution of the other outstanding issues. On March 13, 2002, Belmont filed another motion for reconsideration under Rule 59(e) and Rule 60(b)(1) of the FRCP, and Local Rule 6.3, again arguing that he is entitled to recover statutory damages for each of defendant's violations of TILA. Belmont sought an order stating that he is entitled to make multiple recoveries, vacating the portions of all previous decisions to the contrary, and vacating the March 6, 2002 final judgment. Belmont also requested that discovery be allowed to continue. In a subsequent letter, Belmont stated that he sought recovery for five separate violations of TILA. In addition, he stated that if discovery were reopened, he would seek: (1) all communications between defendant and any third party which made an adverse comment on his creditworthiness; (2) all communications between defendant and Gulf State Credit (which Belmont believes could either show an attempt to collect a disputed amount or be an adverse credit report); and (3) evidence that certain account statements by defendant were accurate. Based on this anticipated discovery, Belmont said that he could seek separate recovery for additional violations of TILA's provisions that bar making an adverse credit statement, or reporting as delinquent a dispute amount, after receiving a billing-error notice, *see* § 1666a(a), and taking an action to collect a disputed amount after receiving a billing-error notice but before resolving the notice. *See* § 1666(a)(B).

### Discussion

Belmont's current motion raises two issues. First, defendant argues that Belmont's motion should not be considered at all, contending that Belmont is merely relitigating issues that have already been decided. Second is the merits of the motion itself.

### (1)

At the outset, it should be noted that Belmont's most recent motion is not untimely. This is because Belmont filed the instant motion promptly after the delayed final judgment was issued.

Defendant argues that Belmont's motion should not be considered at all because doing so would give him another "bite at the apple" by relitigating an issue already decided by the court.

Rule 59(e) allows a party to file a motion to alter or amend a judgment within ten days after the entry of judgment. Similarly, Local Civil Rule 6.3 requires a party moving for reconsideration to set forth "the matters or controlling decisions which ... the court has overlooked." Local Civil Rule 6.3. "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion

reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995); *see also Chang v. United States,* 250 F.3d 79, 86 n. 2 (2d Cir.2001); *United Parcel Serv. of Am. v. Net, Inc.,* 185 F.Supp.2d 274, 279 (E.D.N.Y.2002). This high burden was established in part "to dissuade repetitive arguments on issues that have already been considered fully by the court." *Caleb & Co. v. E.I. DuPont De Nemours & Co.,* 624 F.Supp. 747, 748 (S.D.N.Y.1985). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate old issues." *Shrader,* 70 F.3d at 257. However a motion under Rule 59(e) and Local Rule 6.3 gives the court "an opportunity to correct manifest errors of law." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,* 182 F.R.D. 97, 100 (S.D.N.Y.1998). The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court. *See Devlin v. Transp. Communications Int'l Union,* 175 F.3d 121, 132 (2d Cir.1999).

Similarly, relief from a final judgment, order, or proceeding under Rule 60(b) is "extraordinary judicial relief" and may be granted "only upon a showing of exceptional circumstances." *Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir.1986); *see also United States v. Int'l Bhd. of Teamsters,* 247 F.3d 370, 391 (2d Cir.2001); *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1144 (2d Cir.1994). Relief may be granted under Rule 60(b)(1) relief may be granted based on "mistake, inadvertence, surprise, or excusable neglect," and under Rule 60(b)(2) based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." As with a Rule 59(e) motion, a Rule 60(b) motion for relief from judgment under Rule 60(b) may not be used to relitigate the merits of a case. *See Competex, S.A. v. Labow,* 783 F.2d 333, 335 (2d Cir.1986). The decision to grant or deny a Rule 60(b) motion is also addressed to the sound discretion of the district court. *See Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf,* 930 F.2d 240, 244 (2d Cir.1991).

Defendant argues that since the question of multiple-recovery or single-recovery under TILA was decided first in the August 18, 2000 Memorandum and Order and again addressed in the January 14, 2002 Memorandum and Order, Belmont may not relitigate the issue. Defendant also contends that Belmont has not pointed to any "exceptional circumstances" that would entitle him to relief.

However, Belmont argues that his motion is not a relitigation of the issue because it was never fully litigated in the first place. Belmont contends that the single-recovery holding of the August 18, 2000 Memorandum and Order was *sua sponte,* and he appears to be correct based on a review of the briefs. Defendant does not dispute this point. The issue was again considered regarding Belmont's November 9, 2001 letter. At that time, Belmont partially briefed the issue, and defendant did not address its merits.

Belmont's full arguments on the merits raise legal questions that were not previously considered in these proceedings. Therefore, his motion for reconsideration is not a relitigation of old issues. Accordingly, the merits of his motion will be considered.

### (2)

The question raised by Belmont is purely one of statutory interpretation, and is of first impression in at least the Second Circuit. At issue is whether TILA limits Belmont to a single recovery of between $100 and $1,000, or whether he is entitled to multiple recoveries for each of defendant's violations.

As noted above, defendant: (1) violated § 1666(a)(3)(A) by not replying to Bel-

mont's Notice of Billing Error within the time specified by TILA; (2) violated § 1666(a)(3)(B) by not making appropriate corrections to Belmont's account or sending a written explanation within two billing cycles of the reasons why it believed the account was correctly shown in the statement; (3) twice violated § 1666a(a) by threatening to make an adverse credit report while Belmont's Notice of Billing Error remained unresolved; and (4) violated § 1666a(a) by making one adverse credit report regarding Belmont.[1] These sections are within Part D of Subchapter I of TILA.

Section 1640 governs liability for TILA violations. Under § 1640(a)(2):

> Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person ... except that the liability under this subparagraph shall not be less than $100 or greater than $1,000.

15 U.S.C. § 1640(a)(2). However, § 1640(g) limits at least some recovery under TILA, mandating:

> The multiple failure to disclose to any person any information required under this part or part D or E of this subchapter to be disclosed in connection with a single account under an open end consumer credit plan, other single consumer credit sale, consumer loan, consumer lease, or other extension of credit, shall entitle the person to a single recovery under this section but continued failure to disclose after a recovery has been granted shall give rise to rights to addi-

tional recoveries. This subsection does not bar any remedy permitted by section 1635 of this title.

15 U.S.C. § 1640(g).

Belmont argues that, on its face, § 1640(g) only limits to a single recovery a "multiple *failure to disclose*," and that since defendant's violations were other types of TILA violations, not failures to disclose information required under the relevant parts of TILA, the single recovery limitation does not apply here.

Belmont's argument is persuasive for several reasons. First, it is clear that the violations committed by defendant were not failures to disclose required information. Section 1602 contains definitions for this statute, and under "material disclosures," it lists:

> [T]he annual percentage rate, the method of determining the finance charge, and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by section 1639(a) of this title.

15 U.S.C. § 1602(u). Thus, the plain meaning of the statute appears to be that single-recovery applies only to failures to disclose listed in § 1602(u), and not other violations of TILA, such as those in this case in which the defendant failed to timely respond to Belmont's Notice of Billing Error and improperly threatened to make an adverse credit report.

Moreover, a comparison between the language of § 1640(a) and § 1640(g) dem-

---

1. Defendant argues that the August 18, 2000 Memorandum and Order only found two violations of TILA, and attempts to reserve the right to supplement its papers on the question of other violations. However, defendant is mistaken—although the August 18, 2000 Memorandum and Order found TILA violations based on two sections of the statute, it clearly noted five separate violations.

onstrates that Congress could have applied the single-recovery provision to all violations, but did not do so. Section 1640(a) specifies that "any creditor who *fails to comply with any requirement imposed* under this part ... or part D or E of this subchapter ... is liable." This broad language clearly encompasses all violations of the relevant parts of TILA. In contrast, § 1640(g) refers to a narrower group of failures to disclose.

On the other hand, the two circuit courts cases that touched on this question indicated that the single-recovery mechanism covers even violations such as those committed here. However, in neither of these cases did the court do any statutory interpretation or analysis, and instead just presumed that § 1640(g) applies to all TILA violations. The most analogous case to the situation here is *Murray v. Amoco Oil Co.,* 539 F.2d 1385 (5th Cir.1976), the case cited in the January 14, 2002 Memorandum and Order. In *Murray,* the court simply stated in a footnote that the plaintiff "would of course be limited to one recovery" under § 1640(g) for defendant's failure to send three monthly credit card statements to plaintiff and for improperly imposing finance charges several times. *Id.* at 1387 n. 4. In addition, in *Strange v. Monogram Credit Card Bank of Georgia,* 129 F.3d 943 (7th Cir.1997), the case cited in the August 18, 2000 Memorandum and Order, the court simply assumed that the plaintiff could only recover once when a creditor failed to correct a billing error on six monthly statements. *Id.* at 947. However, the court did not even refer to § 1640(g).

Belmont also provided one district court case that somewhat supports his position. In *Aquino v. Public Fin. Consumer Disc. Co.,* 606 F.Supp. 504 (E.D.Pa.1985), a creditor first failed to disclose the date by which the plaintiff could rescind a transaction, then refused to honor the plaintiff's subsequent rescission. *Id.* at 507, 509. When the defendant argued that the plaintiff was only entitled to one statutory damage award under § 1640(g), the court held that "nothing in that subsection limits obligors to one recovery per transaction" when there is both a disclosure violation and a rescission violation. *Id.* at 510–11. However, as this case involved two types of violations, one of which was a disclosure violation, it is not directly on point.

The cases provided by the defendant also are not on point,[2] and no others directly addressing this issue were discovered in extensive independent research.[3]

Thus, it appears that *Murray* and *Strange,* although on point, are not controlling. Based on an independent interpretation of the statute itself, § 1640(g)'s single-recovery provision does not apply to this case, and each violation committed by defendant results in a separate statutory recovery for Belmont.

Section 1640(a)(2)(A) provides for a penalty of twice the amount of any finance charge in connection with the transaction, except that the penalty may not be less than $100 or greater than $1,000. As the finance charge associated with Belmont's transaction was $769.13, the August 18, 2000 Memorandum or Order awarded Belmont the statutory maximum of $1,000.

**2.** The cases provided by defendant all address multiple failures to disclose. *See Turner v. Firestone Tire & Rubber Co.,* 537 F.2d 1296, 1297–98 (5th Cir.1976); *Jackson v. Columbus Dodge, Inc.,* 676 F.2d 120, 121 (5th Cir.1982); *Reliable Credit Serv., Inc. v. Bernard,* 339 So.2d 952, 954 (La.App. 4th Cir.1976).

**3.** At best, vague language in *Berman v. Nationsbank,* 1998 WL 88342 (E.D.Pa.1998) appears to back the position that § 1640(g) applies to more than just multiple failures to disclose. *See id.* at *2.

The conclusion that defendants violated TILA a total of five times and that Belmont should recover for each violation means that he should be awarded the maximum $1,000 for all five violations.[4] Accordingly, Belmont is awarded $5,000.

### (3)

Belmont also seeks to reopen discovery in an attempt to uncover additional potential non-disclosure violations of TILA. However, under Rule 59(e) of the FRCP and Local Rule 6.3, motions for reconsideration are denied unless the moving party can "point to controlling decisions or [factual] data that the court overlooked." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). These potential other violations of TILA were not overlooked; they were simply not pursued previously by Belmont. Just because Belmont is correct that the August 18, 2000 Memorandum and Order misinterpreted the statute does not mean that he is entitled to further discovery to take full advantage of this clarification where this issue was first raised in Belmont's second motion for reconsideration.

Similarly, Rule 60(b) is "extraordinary judicial relief" that may be granted "only upon a showing of exceptional circumstances." *Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir.1986). Under Rule 60(b)(2) relief may be granted based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Here, however, Belmont has not offered any newly discovered evidence—he only seeks to use discovery in hopes of finding further evidence. And even if he did find new evidence, it would not be of the type that could not have been discovered previously by due diligence. Nor has Belmont alleged any "mistake, inadvertence, surprise, or excusable neglect" as required

under Rule 60(b)(1). Accordingly, Belmont's motion to reopen discovery is denied.

### Conclusion

Belmont's motion for an order stating that he is entitled to recover for each of defendant's five violations is granted, and a total of $5,000 is awarded. Belmont's request to reopen discovery is denied. Judgement will be entered accordingly and the Clerk of the Court is directed to close the case.

---

4. The $769.13 finance charge is in connection with each of the five violations, and twice this amount exceeds the $1,000 statutory maximum.