GREGORY, Circuit Judge,
concurring in part and dissenting in part.
I.
I write separately to dissent solely from the Court’s reading of 15 U.S.C. § 1640(a)(2)(A)(1998). I would find that Congress, with the 1995 amendments to TILA, did not change the application of the $1,000 cap in § 1640(a)(2)(A)(ii). Because the cap still applies to (2)(A)(i), I would find that the district court erred in granting Nigh damages in excess of that statutory limit.
II.
On appeal, Koons argues that the district court improperly instructed the jury on the measure of damages for Nigh’s claim under TILA. The district court informed the jury that, pursuant to TILA, damages were to be equal to “twice the amount of any finance charge in connection with the transaction.” § 1640(a)(2)(A)(i); J.A. at 764. Based on this instruction, the jury awarded Nigh $24,192.80 on his TILA claim. Koons insists that the $1,000 statutory cap in § 1640(a)(2)(A)(ii) applies to the calculation of damages under (2)(A)(i), and that the district judge should have reduced the award accordingly.
Before the 1995 amendments to TILA, 15 U.S.C. § 1640(a) read, in pertinent part, as follows:
Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part ... with respect to any person is liable to such person in an amount equal to the sum of — ...
(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, or (ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1000; or
(B) in the case of a class action, such amount as the court may allow, except that ... the total recovery under this subparagraph ... shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor....
15 U.S.C. § 1640(a)(1994) (emphasis added). That is, subparagraph (A) concluded with the qualification that “liability under this subparagraph shall not be less than $100 nor greater than $1,000.” Both parties concede — and it is Fourth Circuit law — that this limitation applied to the entire subparagraph, both subsections (2)(A)(i) and (2)(A)(ii). See Mars v. Spartanburg Chrysler Plymouth, 713 F.2d 65, 67 (4th Cir.1983). See also Strange v. Monogram Credit Card Bank of Ga., 129 F.3d 943, 947 (7th Cir.1997) (citing Mars).
This reading of the statute was buttressed by the use of the same “under this subparagraph” language in § 1640(a)(2)(B), which stated (and still states), “[T]he total recovery under this subparagraph ... shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor.” (Emphasis added). The plain reading of the pre-1995 statute was that there was one statutory cap on damages under subparagraph (B) and a separate cap under subparagraph *131 (A). The use of the phrase “under this subparagraph” in relation to both limits made it clear that the caps were applicable to the whole of their respective subpara-graphs. This was the reading of the statute adopted by the Mars Court, and it is an interpretation by which this panel is still bound.
In 1995, however, Congress amended the statute to add (2)(A)(iii), relating to real estate transactions. The current statute reads, in relevant part:
(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, (ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1000, or (in) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2000....
15 U.S.C. § 1640 (1998) (emphasis added). The 1995 amendments did not include any wholesale changes to the statute; the newly drafted third clause was simply tacked on to the end of the subparagraph. Still, with the addition of (2)(A)(iii), the phrase “under this subparagraph” cannot apply to all of (2)(A) as Congress initially intended, because it does not apply to (iii), which has its own cap of $2,000. Thus, the question before this Court is whether Congress meant to change the application of the statutory cap, and thus abrogate Mars v. Spartanburg Chrysler Plymouth by adding (2)(A)(iii) to the statute.[1]
I would find that Mars is still good law because there is no evidence that Congress intended to override the Fourth Circuit’s long-standing application of the $1,000 cap to both (2)(A)(i) and (2)(A)(ii). The Seventh Circuit, the only Circuit outside of our own to interpret the amended statute, has explained:
One could argue that § 1640(a)(2)(A)(i) and (ii) are separate “subparagraphs,” and that “liability under this subpara-graph” means only liability under § 1640(a)(2)(A)(ii). Although that reading has a certain appeal ... the history of this part of the statute suggests that such a reading has its own problems. Until 1995, § 1640(a)(2)(A) had only two subsections, the present (i) and (ii). Courts uniformly interpreted the final clause, which established the $100 minimum and the $1,000 maximum, as applying to both (A)(i) and (A)(ii).
Strange, 129 F.3d at 947 (emphasis added).[2]
*132 Disregarding the Seventh Circuit’s well-reasoned analysis, the majority elects to create a circuit split, reasoning that the addition of (2)(A)(iii) has changed the meaning of the word “subparagraph” in (2)(A)(ii). Finding that a new reading of “subparagraph” is necessary, the majority states, “The inclusion of the new maximum and minimum in (iii) shows that the clause previously interpreted to apply to all of (A), can no longer apply to (A), but must now apply solely to (ii), so as not to render meaningless the maximum and minimum articulated in (iii).” Ante, at 126-127.
If the $1,000 cap was intended to apply only to (ii), however, then the inclusion of the phrase “under this subparagraph” would be superfluous; the meaning of (ii) would be unchanged by its deletion. It is, of course, a well-recognized rule of statutory construction that courts should “avoid a reading [of a statute] which renders some words altogether redundant.” Lane v. United States, 286 F.3d 723, 731 (4th Cir.2002) (quoting Gustafson v. Alloyd Co., 513 U.S. 561, 574, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995)). Therefore, a reading of § 1640 making the phrase “under this subpara-graph” meaningless should be disfavored.
Even more, to limit the $1,000 cap only to (2)(A)(ii) would create an inconsistency within the statute. The $2,000 cap in (2)(A)(iii) applies only to that individual clause, even though there is no phrase limiting its effect to one “subparagraph.” If Congress also intended to limit the reach of the statutory cap in (ii), then it would have either deleted the words, “under this subparagraph” from (ii), or included the phrase in both (ii) and (iii). By declaring that the statutory cap in (ii) should apply to claims “under this subpar-agraph,” but not similarly qualifying the cap in (iii), Congress must have meant the statutory caps in those two clauses to have different applications.
This reading is made even more compelling when one considers that the phrase “under this subparagraph” in § 1640(a)(2)(B) indisputably applies to all of subparagraph (B). Similarly, the statutory cap following (2)(A)(ii) applies to all claims under subparagraph (A), with the exception of claims under (2)(A)(iii), which contains its own, discrete limit. In short, the most logical interpretation of the statute is to read the phrase “under this sub-paragraph” as applying generally to an entire subparagraph, either (A) or (B), and to read (2)(A)(iii) as creating a specific carve-out from that general rule for real-estate transactions.
This is the reading that has been adopted by the Seventh Circuit:
[T]he 1995 amendment was designed simply to establish a more generous minimum and maximum for certain secured transactions, without changing the general rule on minimum and maximum damage awards for the other two parts of § 1640(a)(2)(A). We therefore conclude that the “subparagraph” mentioned in § 1640(a)(2)(A)(ii) continues to encompass what is now codified as sub- *133 parts (A)(i) and (A)(ii), and not just sub-part (A)(ii).
Strange, 129 F.3d 943, 947 (7th Cir.1997). When Congress added § 1640(a)(2)(A)(iii), it included a $2,000 cap specifically for (iii), but left the older $1,000 cap unchanged. The qualifier, “under this subparagraph,” remained. Thus, I would hold that the addition of (2)(A)(iii) did not alter the meaning of (2)(A)(i) or (2)(A)(ii). To hold otherwise would be to dramatically increase creditors’ liability exposure under § 1640(a)(2)(A), without any explicit, statutory language to support such an increase.
III.
In sum, I concur with the majority’s assessment that Koons engaged in a variety of scurrilous business practices that support the jury’s finding of liability under both TILA and the VCPA. However, for the reasons articulated above, I believe that Koons’ statutory liability for its TILA violation is capped at $1,000. Accordingly, I dissent in part from the majority’s judgment.

. The majority claims that its holding is supportable without concluding that Mars has been abrogated because the 1995 amendments present this Court with a "new statute” that was not before the Mars Court in 1983. Ante, at 127. The Court explains, "The Mars decision plausibly interpreted the phrase 'under this subparagraph to apply to the whole of subparagraph (A) in 1983. But the 1995 amendment ... rendered Mars’ interpretation defunct.” Ante, at 126 (emphasis added). As a preliminary matter, I have trouble understanding the material distinction between a congressional act that renders a court’s interpretation defunct and an act that abrogates that same interpretation. Regardless, the amendments do not create a new statute, but simply append a third clause to the original law. Thus, to reach its result the majority must either: (1) overrule Mars (which it cannot do); or (2) find that Mars has been abrogated. The majority effectively recognizes this fact when it states that the "prior [Mars ] opinion ... is necessarily brought before us for review so that we may ascertain whether the logic of that prior interpretation still applies ...." Ante, at 127.

. Similarly, one scholar has observed:
*132 [Congress] added the real estate limitation without changing the word "subpara-graph.” That lapse should not lead to a restriction of liability solely as to part (ii) because that would be a significant change that would require the word "subpara-graph” to be applied only to part (ii), when that has always been applied to everything included in subparagraph (A).
Elwin Griffith, Searching for Truth in Lending: Identifying Some Problems in the Truth in Lending Act and Regulation Z, 52 Baylor L.Rev. 265, 305 (2000). As a result, Professor Griffith concluded, "Congress did not change its mind about the meaning of that word, but instead neglected to make the necessary adjustment when it added a third part to accommodate transactions secured by real estate.” Id.