**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BARBEE B. LYON and JOAN KRUSE,
*Plaintiffs-Appellants,*

v.

CHASE BANK USA, N.A.,
Captioned in original complaint as
JP Morgan Chase & Co.,
*Defendant-Appellee.*

No. 10-35230

D.C. No.
3:07-cv-01779-AC

BARBEE B. LYON and JOAN KRUSE,
*Plaintiffs-Appellants,*

v.

CHASE BANK USA, N.A.,
Captioned in original complaint as
JP Morgan Chase & Co.,
*Defendant-Appellee.*

No. 10-35846

D.C. No.
3:07-cv-01779-AC

OPINION

Appeal from the United States District Court
for the District of Oregon
John V. Acosta, Magistrate Judge, Presiding

Argued and Submitted
July 11, 2011—Portland, Oregon

Filed August 30, 2011

Before: Alfred T. Goodwin, Harry Pregerson, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Goodwin

16531

## COUNSEL

Anna K. Sortun (argued), of Tonkon Torp LLP, Portland, Oregon, for the plaintiffs-appellants.

John L. Langslet (argued), Michael J. Farrell, and Joan L. Volpert, of Martin, Bischoff, Templeton, Langslet & Hoffman LLP, Portland, Oregon, for the defendant-appellee.

## OPINION

GOODWIN, Senior Circuit Judge:

This case originated with a misunderstanding regarding a $645 charge on the credit-card bill of Appellant Barbee Lyon.

Appellee Chase Bank USA, N.A. ("Chase") misidentified the basis for the charge but failed to respond to Lyon's requests for information about it. Chase continued to seek payment and reported the debt as delinquent to credit agencies, despite Lyon's protest. In doing so, Chase admittedly violated multiple sections of the Fair Credit Billing Act ("FCBA"), 15 U.S.C. §§ 1666–1666j.

After unsuccessfully attempting to get a direct response from Chase, Lyon and his wife filed this action in the District of Oregon, alleging *inter alia* claims under the FCBA and Oregon's Unlawful Debt Collection Practices Act ("UDCPA"), Or. Rev. Stat. §§ 646.639–.643. The trial court dismissed the UDCPA claim and limited Lyon's total recovery under the FCBA to $1000.

We reverse and remand for further proceedings. The trial court erred in holding that Appellants failed to state a claim under the UDCPA. We decline to certify Appellants' proposed question to the Oregon Supreme Court regarding this claim because existing state precedent guides our decision. As to Lyon's FCBA claims, the trial court erred in requiring evidence of detrimental reliance to support actual damages and in limiting statutory damages for Chase's multiple violations of the FCBA to a single recovery. Finally, the trial court abused its discretion in denying any award of attorneys' fees related to Lyon's successful claim under the FCBA.

## I.   BACKGROUND

### A.   The Fair Credit Billing Act, FCBA

Congress enacted the FCBA in order to regulate billing disputes involving "open end consumer credit plans." *See* 15 U.S.C. § 1666; *Gray v. Am. Express Co.*, 743 F.2d 10, 13 (D.C. Cir. 1984) ("The Fair Credit Billing Act seeks to prescribe an orderly procedure for identifying and resolving disputes between a cardholder and a card issuer as to the amount

due at any given time."). If a credit-card holder sends a written notice disputing a charge within sixty days of receiving a bill, the FCBA requires a credit-card issuer to acknowledge the dispute within thirty days, investigate the matter, and provide a written explanation of its decision within ninety days. 15 U.S.C. § 1666(a); *Am. Express Co. v. Koerner*, 452 U.S. 233, 234–37 (1981).

"The creditor must send its explanation before making any attempt to collect the disputed amount." *Koerner*, 452 U.S. at 237; *see also* 15 U.S.C. § 1666(a)(3)(B). Further, "the card issuer must notify the cardholder on subsequent statements of account that he need not pay the amount in dispute until the card issuer has complied with § 1666." *Gray*, 743 F.2d at 14 (citing 15 U.S.C. § 1666(c)(2)). Additionally, "a creditor or his agent may not directly or indirectly threaten to report to any person adversely on the obligor's credit rating . . . and such amount may not be reported as delinquent to any third party until the creditor has met [these] requirements." 15 U.S.C. § 1666a(a). If a creditor fails to comply with any of these provisions, it is subject to civil liability under 15 U.S.C. § 1640 and forfeiture of the disputed amount under § 1666(e).

## B. Oregon's Unlawful Debt Collection Practices Act, UDCPA

Oregon enacted the UDCPA to prohibit debt collectors from using specific abusive practices. *See* Or. Rev. Stat. § 646.639(2) (stating that "[i]t shall be an unlawful collection practice for a debt collector, while collecting or attempting to collect a debt" to undertake actions such as to "threaten the use of force or violence," "[t]hreaten arrest or criminal prosecution," or "[u]se profane, obscene or abusive language in communicating with a debtor").[1] Specifically, Oregon

---

[1]In so doing, the UDCPA mirrors another section of federal consumer-protection statutory scheme, the Fair Debt Collection Practices Act, which prohibits much of the same conduct under federal law. *See* 15 U.S.C. § 1692d.

Revised Statutes § 646.639(2)(k) prohibits a debt collector from "[a]ttempt[ing] to or threaten[ing] to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist."

## C.   The Circumstances of the Billing Dispute

In 2003, Barbee Lyon opened a Visa credit-card account with Chase and identified his wife, Joan Kruse, as an authorized user. In September 2006, Lyon's wallet was stolen, and he notified Chase of the theft of the card. Lyon spoke with Chase's fraud department to identify fraudulent charges but advised Chase that a pending $645 charge payable to Resorts Advantage was a valid, authorized charge. Nonetheless, Chase declined to make payment on this charge, and after being contacted by Resorts Advantage, Lyon paid the debt through a different credit card.

Unbeknownst to Lyon, Chase mistakenly credited his account $645 during the process of resolving fraudulent charges and issuing a new account number. To correct this mistaken credit, Chase added a $645 charge to Lyon's bill months later, which it incorrectly identified as a transaction with Resorts Advantage. After confirming that Resorts Advantage had not been paid by Chase, Lyon disputed this charge, not knowing that Chase was attempting to correct its prior mistake. On April 16, 2007, Chase acknowledged receipt of the billing dispute and notified Lyon that it was investigating the matter and would write to respond to his question.

Chase admits that it never sent a written explanation of the charge and that it failed to respond to multiple letters Lyon sent about the issue. Indeed, months after the original notification, Lyon independently determined that the mistaken credit was the likely basis for the charge and specifically asked Chase to confirm this. Chase again failed to respond. Chase admits that it continued to attempt to collect the debt

from Lyon and levied finance charges related to the debt. Chase also admits that it reported to credit agencies a delinquency by Lyon in paying the debt.

## D.  Procedural History

Lyon and Kruse filed this action in the District of Oregon, alleging violations of the FCBA, a violation of the UDCPA, defamation of their credit, and intentional infliction of emotional distress. Adopting the findings and recommendation of the magistrate judge, the district court granted Chase partial summary judgment. As to the UDCPA claim, the magistrate judge found that "Plaintiffs have presented evidence which, if believed by a trier of fact, could be reasonably viewed as constituting 'coercive and abusive' methods by Chase to collect its debts from Plaintiffs." Nonetheless, the court dismissed the claim, deciding sua sponte that the language of the complaint failed to state a claim under Oregon law. As to the FCBA claims, the district court found that Kruse lacked standing, but Lyon's claims under the statute remained alive because Chase had not contested his standing or FCBA-related allegations. As to the tort actions, the district court found triable issues of fact as to defamation but granted Chase summary judgment on the emotional distress claim.

The parties subsequently agreed to proceed before the magistrate judge, who denied Appellants' motion to amend their complaint. Lyon, who is an attorney, had been representing himself up to this point, but retained separate counsel in December 2009 as the case neared trial. Chase then moved to limit argument or evidence of its multiple violations of the FCBA. While admitting it had violated the FCBA, Chase argued that "Lyon is precluded from recovering separate statutory penalties for multiple technical violations." The magistrate judge granted this motion *in limine* during an initial pretrial conference without issuing a written order.

Chase further moved to exclude evidence or argument regarding Lyon's right to recover actual damages, arguing that Lyon suffered no out-of-pocket economic loss and that an award of actual damages under the FCBA requires evidence of detrimental reliance. The magistrate judge stated during the pretrial conference that "Lyon's [non-attorney] time and its value does constitute an item of special or actual damage."[2] Nonetheless, the court held that Lyon had to provide evidence of detrimental reliance in order to support an award of actual damages resulting from Chase's violations of the FCBA. Because Lyon had not relied on information from Chase, as Chase had provided none, the court granted the motion.

The magistrate judge subsequently allowed Chase to amend its answer to admit liability under the FCBA up to a $1000 maximum statutory penalty. Accordingly, only Appellants' defamation claim was presented to the jury, which rendered a verdict in favor of Chase. Although the magistrate judge entered judgment in favor of Lyon as to his FCBA claims, his recovery was limited to $1000 in statutory damages and an award of reasonable attorneys' fees.

Lyon moved for an award of $37,087 in attorneys' fees, based on the work of his separate counsel before and during trial in pursuing both the FCBA and defamation claims. While finding the requested hourly rate reasonable, the court stated that it would grant fees only for work related to Lyon's attempted recovery of multiple statutory penalties under the FCBA, not for any other FCBA-related work. The court found, however, that the billing statements presented in support of the fees did not separately identify "work related to

---

[2]Filed within the district court docket, there is a partial transcript of the pretrial conference at which the magistrate judge ruled on Chase's motions *in limine*. Official Court Transcript of Proceedings, District of Oregon Case No. 07-1779, Docket No. 119 (April 9, 2010). As part of the district court record, we rely on this transcript even though it has not been provided by the parties as part of the excerpts of record. *See* Fed. R. App. P. 10(a)(2).

pursuing multiple statutory penalties for violations of the FCBA." The magistrate judge concluded that the billing statements therefore did not meet the level of specificity for fee petitions recommended by the District of Oregon.[3] On this basis, the court decided that it was "unable to award such fees because the billing statement is insufficiently specific." The magistrate judge then denied Lyon's request for attorneys' fees completely.

## II.  DISCUSSION

Arguing that the district court misconstrued the basis of their UDCPA claim, Appellants first contend that the district court erred in deciding that they failed to state a claim under Oregon law. Further, they ask this court to certify the following question to the Oregon Supreme Court: "whether a creditor violates Oregon['s] UDCPA when its attempt to collect a debt is prohibited by [the] FCBA." As to Lyon's claims under the FCBA, he contends that the magistrate judge erred by requiring evidence of detrimental reliance to support actual damages and by restricting statutory damages to a single penalty. Finally, Lyon argues that the magistrate judge abused his discretion in denying any award of attorneys' fees related to his FCBA claims.

---

[3]On the website for the District of Oregon, the district court has posted a message regarding fee petitions, which states in relevant part: "Increasingly, the Court has reviewed fee petitions where all or a substantial part of an attorney's time for one day is billed as a 'block' without segregating time for individual tasks. This makes assessing the reasonableness of the time spent on a particular task extremely difficult. The Court recommends that members of the bar record time spent on particular, individual tasks and support their fee petitions with a level of documentation that allows the Court, and opposing counsel, to adequately review the reasonableness of the time spent on a single task." U.S. District Court for the District of Oregon, *Message from the Court Regarding Fee Petitions*, http://www.ord.uscourts.gov/court-policies/message-from-the-court-regarding-fee-petitions (last visited July 6, 2011).

## A.  Standard of Review

While neither the magistrate judge nor the district court identified the procedural basis for the *sua sponte* dismissal of Appellants' UDCPA claim, we construe the dismissal for failure to state a claim as being made under Rule 12(c) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."); *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (noting that pre-answer dismissal for failure to state a claim under Rule 12(b)(6) is "functionally identical" to a post-answer dismissal under Rule 12(c)). We review judgments on the pleadings made under Rule 12(c) de novo. *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1131 (9th Cir. 2009) (citing *Fajardo v. Cnty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999)). " 'A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, [a] party is entitled to judgment as a matter of law.' " *Dunlap v. Credit Prot. Ass'n, L.P.*, 419 F.3d 1011, 1012 n.1 (9th Cir. 2005) (per curiam) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)).

Because the magistrate judge's rulings on Chase's motions *in limine* were based on statutory interpretation and Ninth Circuit precedent, we review these questions of law de novo. *See Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010); *Harper v. U.S. Seafoods LP*, 278 F.3d 971, 973 (9th Cir. 2002). We review the denial of an award of attorneys' fees for an abuse of discretion. *St. John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1058 (9th Cir. 2009).

## B.  Appellants' Claim under the UDCPA

[1] As noted, Oregon enacted the UDCPA to prohibit debt collectors in the state from using certain abusive collection practices. *See* Or. Rev. Stat. § 646.639(2). Specifically,

§ 646.639(2)(k) prohibits a debt collector from "[a]ttempt[ing] to or threaten[ing] to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist . . . ."

**[2]** Appellants' complaint states that Chase "violated Oregon Revised Statutes [§] 646.639(2)(k) by attempting to collect a debt when it knew or had reason to know that its right to do so did not exist." In support, the complaint alleges that Chase failed to comply with the requirement under 15 U.S.C. § 1666(a) that it provide a written explanation for a properly disputed debt. The complaint further alleges that Chase was prohibited under the FCBA from attempting to collect the disputed debt. It also alleges that Chase was prohibited under § 1666a from reporting the debt as delinquent to credit agencies. In short, Appellants' UDCPA claim is predicated on Chase's violation of the FCBA and the federal statute's restrictions on Chase's right to attempt to collect the debt or report it as delinquent.

**[3]** In *Isom v. Portland General Electric Co.*, 677 P.2d 59, 65 (Or. Ct. App. 1983), the Oregon Court of Appeals held that plaintiffs stated a valid claim to relief under § 646.639(2)(k) where a bill collector took actions related to their debts that were prohibited by separate federal and state statutes. *See also Porter v. Hill*, 838 P.2d 45, 49 (Or. 1992) (citing *Isom* as a correct application of § 646.639(2)(k)). The plaintiffs in *Isom* alleged that Portland General Electric ("PGE") violated § 646.639(2)(k) because it "insisted on full payment [of utility bills] instead of explaining the option of partial payment [as required under Oregon Revised Statutes § 757.760(2)], . . . asserted a right to plaintiffs' full cash payment which, under the Low Income Energy Assistance Act [42 U.S.C. §§ 8621 et seq.], they knew did not exist and terminated service despite full payment." 677 P.2d at 64. The court held "a jury could find PGE attempted to or threatened to enforce the right to terminate service when it had reason to believe that the right to terminate was not available because *plaintiffs quali-*

*fied for legislatively mandated relief.*" *Id.* at 65 (emphasis added).

**[4]** Under the analysis adopted in *Isom*, Appellants have stated a valid claim for relief under § 646.639(2)(k). Pursuant to the requirements imposed under the FCBA, Chase did not have the right to attempt to collect the disputed charge or to report it to credit agencies as delinquent without first providing a written explanation. *See* 15 U.S.C. §§ 1666(a), 1666a(a); *Koerner*, 452 U.S. at 237. By asserting rights through the actions of its collections agents when it had reason to know of the relevant restrictions imposed by the FCBA, Chase could be found to have violated Oregon Revised Statutes § 646.639(2)(k). Because this result is controlled by *Isom*, we conclude that certification of Appellants' proposed question to the Oregon Supreme Court is unwarranted, and deny the motion on this basis.[4] *See* Or. Rev. Stat. § 28.200 (stating that the Oregon Supreme Court may answer certified questions of law only when "there is no controlling precedent in the decisions of the Supreme Court and the intermediate appellate courts of this state"); *see also Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982) ("An intermediate state appellate court decision is a 'datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.' " (quoting *West v. A.T.&T. Co.*, 311 U.S. 223, 237 (1940)).

**[5]** The district court erred by suggesting that "Plaintiffs premise their Oregon UDCPA claim on the fact that there was no underlying debt, which allegations do not invoke the

---

[4]We note, however, that the parties have not addressed whether every separate provision of the FCBA at issue here could support separate violations of § 646.639(2)(k). Because this issue was not raised before the trial court, we deny this motion without prejudice to subsequent certification should unaddressed aspects of Appellants' claim prove distinguishable from our holding here.

UDCPA's coverage." The district court is correct that § 646.639(2)(k) does not protect against efforts to collect a nonexistent debt. *See Porter*, 838 P.2d at 48–49 ("The statute proceeds from the assumption that a debt does (or might) exist and prohibits the debt collector from using unfair practices to collect it. Nothing in the statute evidences a legislative concern with the existence or amount of the underlying debt, as distinct from the use of abusive methods to pressure debtors to pay their debts."). There is no allegation in the complaint, however, that suggests the disputed $645 amount was not owed at all. To the contrary, the complaint includes a letter Lyon sent to Chase in which he asks it to confirm what we now know to be correct: that the $645 charge was added to his bill in order to correct a mistaken $645 credit Chase had previously applied. In determining whether a complaint states a plausible claim to relief, a court must " 'accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs.' " *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011) (quoting *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002)). Seen in the light most favorable to the Appellants, the allegations in the complaint suggest that the $645 was owed due to the mistaken credit, but that Chase failed to provide the required clarification of the charge and was therefore prohibited from attempting to collect it or report it as delinquent.

**[6]** Because this conduct by Chase violates the FCBA whether or not the debt was owed, Appellants' claim does not violate the decision in *Porter*. *See* 838 P.2d at 48–49. The Oregon Supreme Court held that § 646.639(2)(k) should be "read to prohibit certain methods of collecting a debt, such as enforcing a right collateral to the debt in order to pressure the debtor to pay the debt." *Id.* at 49. Congress's clear intent in adopting the FCBA was to prevent a creditor from simply ignoring a billing dispute when attempting to collect a debt. *See* 15 U.S.C. § 1601(a) (stating that the purpose of the statute is "to protect the consumer against inaccurate and unfair credit billing and credit card practices"). The ultimate validity

of a disputed charge does not relieve a creditor of the obligations and restrictions imposed under the FCBA. Accordingly, the statute's restrictions fit within *Porter*'s interpretation of § 646.639(2)(k) as "prohibit[ing] certain methods of collecting a debt." 838 P.2d at 49. We therefore reverse the district court's dismissal of Appellants' UDCPA claim and remand this claim for further proceedings.

## C.    Actual Damages Resulting from Violations of the FCBA

**[7]** Chase admits that it violated the FCBA by failing to provide a written explanation in response to Lyon's billing dispute. *See* 15 U.S.C. § 1666(a). Chase further admits that because no explanation was provided, it also violated the FCBA by attempting to collect the disputed charge and reporting it as delinquent to credit agencies. *See* 15 U.S.C. §§ 1666(a)(3)(B), 1666a(a). Pursuant to 15 U.S.C. § 1640(a)(1), a creditor who fails to comply with "any requirement" imposed under the FCBA is liable for "any actual damage sustained by [the plaintiff] as a result of the failure." The magistrate judge found that Lyon's loss of personal time in trying to resolve the disputed charge "constitute[d] an item of special or actual damage."[5] Chase argues, however, that Lyon cannot recover actual damages because Ninth Circuit precedent requires evidence of detrimental reliance for any such recovery under § 1640(a)(1). We hold that evidence of detrimental reliance is not required to support an award of actual damages resulting from violations of 15 U.S.C. § 1666 or § 1666a.

---

[5]Chase has not directly contested this finding, and we will not address it *sua sponte*. As an alternative basis on which we might affirm, however, Chase contends there is insufficient evidence to support an award of actual damages. This factual claim contradicts the magistrate judge's finding. Due to the limited evidentiary record presented here, we cannot evaluate Chase's argument and decline to address it. *Cf. Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008) (noting that we may affirm a dismissal of relief on "any ground supported by the record").

**[8]** Chase mistakenly suggests—and the magistrate appears to have accepted—that our holding in *Gold Country Lenders v. Smith* (*In re Smith*), 289 F.3d 1155, 1157 (9th Cir. 2002) (per curiam), applies to Lyon's claims under the FCBA. *In re Smith* addressed whether a plaintiff could recover actual damages under § 1640(a)(1) based on a creditor's violations of the Truth in Lending Act ("TILA") under § 1638(a)(3) and (4) for failing "to conspicuously disclose and define the 'finance charge' and 'annual percentage rate' " of a credit transaction. 289 F.3d at 1156. We held that a bankruptcy claimant could not recover actual damages because she failed to present evidence of her detrimental reliance on the inadequate financing terms presented to her at the time of the loan agreement. *Id.* at 1157. Agreeing with the other circuits that have addressed the issue, we concluded that without evidence of detrimental reliance, the claimant could not satisfy the causation element necessary to support actual damages under § 1640(a)(1):

> We join with other circuits and hold that in order to receive actual damages for a TILA violation, *i.e.*, "an amount awarded to a complainant to compensate for a *proven* injury or loss," Black's Law Dictionary 394 (7th ed. 1999) (emphasis added), a borrower must establish detrimental reliance. Without any evidence in the record to show that Smith would either have secured a better interest rate elsewhere, or foregone the loan completely, her argument must fail—she presents no proof of any detrimental reliance, *i.e.*, any actual damage.

*Id.* (citing *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001) (en banc) (addressing class claim to actual damages based on TILA disclosure violations and holding "that detrimental reliance is an element of a TILA claim for actual damages, that is a plaintiff must present evidence to establish a causal link between the financing institution's noncompliance and his damages"); *Perrone v. Gen. Motors*

*Acceptance Corp.*, 232 F.3d 433, 436–40 (5th Cir. 2000) (addressing class claim to actual damages based on TILA disclosure violation and disclosure violations under the Consumer Leasing Act, which also relies on § 1640 for civil liability); *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir. 2000) (affirming denial of class certification based in part on TILA disclosure violations because individual reliance on disclosures precluded certification); and *Peters v. Jim Lupient Oldsmobile, Co.*, 220 F.3d 915, 917 (8th Cir. 2000) (addressing failure to adequately disclose commission related to sale of insurance policies as required under the TILA at § 1638(a)(2)(B)(iii))). We subsequently reapplied this holding in *McDonald v. Checks-N-Advance, Inc.* (*In re Ferrell*), 539 F.3d 1186, 1192 (9th Cir. 2008) (per curiam), another action involving the TILA's specific disclosure requirements under § 1632(a) and § 1638(a) related to finance charges.

**[9]** Notably, *In re Smith*—as well as the out-of-circuit decisions that it follows— involves TILA violations, not violations of the FCBA. While the FCBA is technically an addition to the TILA, both statutes are part of the larger statutory scheme of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601–1693r.[6] Although both statutes rely on § 1640 to delineate civil liability, they differ in ways that affect the application of § 1640. Accordingly, Chase's suggestion that

---

[6]The broader Consumer Credit Protection Act includes the Truth in Lending Act, 15 U.S.C. §§ 1601–1665e; the Fair Credit Billing Act, 15 U.S.C. §§ 1666–1666j; the Consumer Leasing Act, 15 U.S.C. §§ 1667–1667f; the Credit Repair Organizations Act, 15 U.S.C. §§ 1679–1679j; the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x; the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691–1691f; and the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693–1693r. *Rouse v. Law Offices of Rory Clark*, 603 F.3d 699, 706 (9th Cir. 2010). Many of the provisions within the Consumer Credit Protection Act overlap, relying upon each other as well as agency regulations promulgated to implement them. Indeed, Judge Kleinfeld recently referred to this series of statutes as being "like Russian matryoshka dolls, stacked one within another." *Edwards v. Wells Fargo & Co.*, 606 F.3d 555, 557 n.7 (9th Cir. 2010).

all precedent related to the TILA applies with equal force to the FCBA is an oversimplification of the relevant statutes. Because "[t]he purpose of the TILA is to promote the 'informed use of credit' by consumers," *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219 (1981) (quoting 15 U. S. C. § 1601), the TILA's requirements principally focus on disclosures that creditors must make when offering credit. *See* 15 U.S.C. § 1601(a) ("It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."); 15 U.S.C. § 1637(a) (enumerating "[r]equired disclosures" to be made by a creditor to a consumer before an open end consumer credit account can be opened, including disclosures related to billing disputes); 15 U.S.C. § 1638(a) (enumerating "required disclosures" to be made by a creditor for other consumer credit transactions). The FCBA, on the other hand, does not mandate disclosures to be made before credit is offered, rather it outlines procedures and limitations to be followed by creditors during a billing dispute involving an already opened consumer account. *See* 15 U.S.C. §§ 1666–1666j. Indeed, while a creditor must disclose some of its obligations under the FCBA before opening an open end consumer credit account, these disclosure requirements are contained within the TILA. *See* 15 U.S.C. § 1637(a)(7), (b)(10).

[10] Whether "detrimental reliance" has anything to do with causation to support an award of actual damages resulting from violations of the FCBA appears to be a question of first impression. We conclude that applying such a requirement to the FCBA violations admitted here would distort the analysis of causation and thereby contradict the purpose of § 1640(a)(1). As noted, § 1666(a)(3)(B) requires a creditor who is timely notified of a billing dispute to either "make appropriate corrections in the account of the obligor" or "send a written explanation or clarification to the obligor." Chase

did neither and then undertook collection actions prohibited by the statute if it did not meet this obligation. *See* 15 U.S.C. §§ 1666(a)(3)(B), 1666a(a). There is simply no relevant disclosure or conduct under these circumstances that Lyon could have relied upon. Thus, Lyon's lack of detrimental reliance is immaterial to a determination of whether Chase's violations resulted in actual damages. If Chase's argument were to be followed in cases of defiant refusal to comply with § 1666(a)(3)(B), the bank has discovered that silence is truly golden.

To require evidence of detrimental reliance on an unmade explanation would necessarily bar recovery of actual damages because such evidence could never exist. Consumers cannot rely on unmade explanations, and creditors could simply avoid actual damages under the FCBA by never responding to billing disputes—the exact conduct the statute aims to prevent. Such an irrational requirement would contradict the express language of § 1640(a)(1) that a civil plaintiff can recover actual damages resulting from any violation of the FCBA. *See Anderson v. United States*, 803 F.2d 1520, 1523 (9th Cir. 1986) (stating courts have an " 'obligation to so construe federal statutes so that they are consistent with each other,' " quoting *Get Oil Out! Inc. v. Exxon Corp.*, 586 F.2d 726, 729 (9th Cir. 1978)). Accordingly, we hold that evidence of detrimental reliance is not required to support an award of actual damages resulting from violations of 15 U.S.C. § 1666 or § 1666a. We reverse the magistrate judge's order denying an award of actual damages resulting from Chase's FCBA violations and remand this issue for further proceedings.

### D. Statutory Damages for Multiple Violations of the FCBA

**[11]** Pursuant to 15 U.S.C. § 1640(a)(2), a creditor who fails to comply with "any requirement imposed" under the TILA, the FCBA, or the Consumer Leasing Act is liable for an award of statutory damages. "[I]n the case of an individual

action," the amount of the statutory penalty is "twice the amount of any finance charge in connection with the transaction." 15 U.S.C. § 1640(a)(2)(A)(i) (2007).

**[12]** Under § 1640(g), however, Congress expressly limited a plaintiff's recovery for multiple violations of these statutes where the violations involved "multiple failures to disclose." This subsection states:

> The multiple failure to disclose to any person any information required under [the TILA, the FCBA, or the Consumer Leasing Act] to be disclosed in connection with a single account under an open end consumer credit plan . . . shall entitle the person to a single recovery under this section but continued failure to disclose after a recovery has been granted shall give rise to rights to additional recoveries.

15 U.S.C. § 1640(g) (2007).

**[13]** Chase contends that all of its FCBA violations are covered by § 1640(g) and that Lyon's recovery of statutory damages is therefore limited to a single penalty. There is no question that § 1640(g) applies to limit a plaintiff's recovery based on "multiple failures to disclose" credit terms specified by the TILA. *See St. Germain v. Bank of Haw.*, 573 F.2d 572, 577 n.7 (9th Cir. 1977) ("The failure to disclose the existence of an acceleration clause was only one of several violations of TILA alleged by plaintiff. Since multiple failures to disclose in any single credit sale transaction give rise to only one recovery (15 U.S.C. § 1640(g)) our resolution of the acceleration clause issue obviates the need to consider St. Germain's other claims."), abrogated in part on other grounds by *Ford Motor Credit Co. Milhollin*, 444 U.S. 555, 559 (1980). As discussed previously, however, the requirements of the TILA

and the FCBA differ in ways that substantively affect the application of § 1640.[7]

The determinative question here is whether the specific FCBA violations alleged by Lyon constitute failures to disclose required information covered by § 1640(g). This a question of first impression that has not been addressed by other circuits.[8] Based on the FCBA violations alleged here, we conclude that Lyon's recovery of statutory damages is not limited by § 1640(g).

---

[7]Chase largely relies on cases applying § 1640(g) to multiple violations of the TILA, again suggesting that the FCBA and the TILA are indistinguishable. *See, e.g., Jackson v. Columbus Dodge, Inc.*, 676 F.2d 120, 121 (5th Cir. 1982); *Turner v. Firestone Tire & Rubber Co.*, 537 F.2d 1296, 1297–98 (5th Cir. 1976); *Tinsman v. Moline Beneficial Fin. Co.*, 531 F.2d 815, 819 (7th Cir. 1976). For the reasons discussed, these TILA cases are inapposite to a determination of whether § 1640(g) applies to multiple violations of the FCBA.

[8]The parties have identified three out-of-circuit district court cases that have addressed the application of § 1640(g) to violations of the FCBA. *See Belmont v. Assocs. Nat'l Bank (Del.)*, 219 F. Supp. 2d 340, 343–46 (E.D.N.Y. 2002) (finding that § 1640(g) did not apply to FCBA violations under § 1666 and § 1666a); *Tweedy v. RCAM Title Loans, LLC*, 611 F. Supp. 2d 603, 606–607 (W.D. Va. 2009) (finding that § 1640(g) did apply to FCBA violations under § 1666b(a)); *Gengo v. Target Nat'l Bank*, No. H-06-340 (S.D. Texas Jun. 13, 2007) (unpub.) (finding that § 1640(g) did apply to multiple undefined FCBA violations, which the district court characterized as "failing to respond to billing error notices"). The district court in *Belmont* suggested that its analysis conflicts with the circuit decisions in *Murray v. Amoco Oil Co.*, 539 F.2d 1385, 1387 n.4 (5th Cir. 1976) (per curiam) and *Strange v. Monogram Credit Card Bank*, 129 F.3d 943, 947 (7th Cir. 1997). These cases are not relevant to the question here, however. In *Strange*, the Seventh Circuit held that the minimum and maximum penalty specified under § 1640(a)(2)(A)(ii) applies to violations of § 1666. 129 F.3d at 947. Although multiple violations of § 1666 were alleged, *id*. at 944–45, the plaintiff did not appeal the award of only a single statutory penalty, and the Seventh Circuit never addressed the applicability of § 1640(g). In *Murray*, the Fifth Circuit referenced § 1640(g) in only a brief footnote, stating in dicta that § 1640(g) would limit the plaintiff's recovery for alleged multiple failures to send monthly billing and finance statements as required under the TILA pursuant to § 1637(b). 539 F.2d 1385, 1387 n.4. Accordingly, we do not address these decisions.

**[14]** Lyon's complaint specifically alleges that Chase violated § 1666(a), (c), (e), and § 1666a(a) by (1) failing "to provide a written explanation or clarification of the billing error," (2) making "multiple attempts to collect the disputed charge," and (3) "threatening to report, and actually reporting, the disputed charge" to credit agencies. We first note that the relevant language of these FCBA subsections does not use the word "disclosure."[9] Section 1666(a)(3)(B) requires a creditor who is timely notified of a billing dispute either to "make appropriate corrections in the account of the obligor" or to "send a written explanation or clarification to the obligor." Section 1666(a)(3)(B) also requires that the creditor send the explanation or clarification "prior to taking any action to collect the amount." Finally, § 1666a(a) states that "a creditor or his agent may not directly or indirectly threaten to report to any person adversely on the obligor's credit rating or credit standing because of the obligor's failure to pay . . . , and such amount may not be reported as delinquent to any third party until the creditor has met the requirements of [15 U.S.C. § 1666]." Accordingly, the language of the relevant FCBA subsections does not indicate Chase's violations would involve disclosures covered under § 1640(g).[10]

---

[9]There is a single use of the word "disclosure" within § 1666(a), where the statute details the requirements for a valid notice of dispute by the obligor to the creditor. Even this use of the word "disclosure" refers to the requirements imposed by the TILA at § 1637(a)(7) regarding billing statements, however. The word "disclosure" is used nowhere else within § 1666 or § 1666a.

[10]We further note that the section of the Consumer Credit Protection Act that defines the terms used throughout both the TILA and the FCBA does not indicate that the subsections at issue here involve a "material disclosure." *See* 15 U.S.C. § 1602(u) (2007) (defining a "material disclosure" as "the disclosure, as required by this subchapter [15 U.S.C. §§ 1601 et seq.], of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number of and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness . . . ."). The statute provides no definition for a non-material disclosure.

**[15]** If it intended to assert a right to the $645 charge, however, Chase would have been required under § 1666(a)(3)(B)(ii) to provide information, namely the "written explanation or clarification" of the billing dispute. While this subsection might be considered a disclosure requirement, Lyon alleges only a single violation of it. Therefore, even if we were to hold that violations of this specific provision were covered under § 1640(g), Chase's other violations of the FCBA would also have to be covered under § 1640(g) in order for statutory damages to be limited to a single penalty.

**[16]** The FCBA's requirements that a creditor not attempt to collect or to report a disputed debt as delinquent before satisfying its obligations under § 1666(a) are not violated simply by a failure to provide information. While Chase's failure to correct the account or provide a written explanation of the disputed charge is a predicate for its further violations, Chase would not have committed multiple violations of the FCBA absent the affirmative steps it took to collect and report on the disputed charge. Collection actions and adverse credit reports simply cannot be construed as failures to disclose required information. *See* 15 U.S.C. § 1640(g). Accordingly, these violations of the FCBA are not subject to the single-recovery limitation under § 1640(g).

**[17]** Chase's argument that § 1640(g) applies uniformly to any violation of the FCBA simply ignores the language and structure of § 1640, which narrows the application of the single-recovery provision to a subset of violations involving failures to disclose. "In construing a statute we are obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979); *see also Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1175 (9th Cir. 2006) (applying rule of statutory interpretation that "statutes should not be construed in a manner which robs specific provisions of independent effect") (citation and internal quotation marks omitted). Subsection 1640(a)(2)—which outlines the statutory penalty amounts for "any requirement

imposed"—does not indicate that a creditor who committed multiple violations of the FCBA is liable only for a single statutory penalty. To the contrary, § 1640(g) indicates that the single-recovery limitation applies to only a subset of these violations that involve "failure to disclose to any person any information required" under the covered statutes. To read the single-recovery limitation as applying to any requirement of the FCBA would ignore the language of § 1640(g) restricting this limitation to disclosure violations.

Further, "[w]e start with the premise that 'the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.' " *Am. Bankers Ass'n v. Gould*, 412 F.3d 1081, 1086 (9th Cir. 2005) (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). "Our goal in interpreting a statute is to understand the statute 'as a symmetrical and coherent regulatory scheme' and to 'fit, if possible, all parts into a . . . harmonious whole.' " *Id.* (quoting *Brown & Williamson Tobacco Corp.*, 529 U.S. at 133). Congress could have uniformly applied the single-recovery limitation by including it at § 1640(a)(2), where the range for statutory penalties is specified. Congress did not do so. By codifying the single-recovery limitation in a separate subsection at § 1640(g), Congress underscored its application to a particular subset of the requirements imposed under the relevant statutes, namely those dealing specifically with disclosures.

**[18]** Finally, Chase's argument that allowing separate statutory penalties for its multiple violations of the FCBA will lead to a flood of consumer-created claims is without merit. The FCBA violations supporting liability here are the direct result of Chase's own business conduct. These violations cannot be attributed to Lyon, who simply sought an explanation that should be reasonably expected even without statutory requirements.

Even if we were to agree with Chase's policy concern, we do not have the authority to rewrite § 1640 in order to shield

Chase from statutory damages resulting from its multiple violations of the FCBA. We note that the statute already limits a creditor's liability where errors are timely corrected, 15 U.S.C. § 1640(b), where violations were unintentional, § 1640(c), or where a creditor made a good-faith effort to comply with the statute, § 1640(f). Chase has not sought to invoke any of these protections. While § 1640 does not cap statutory damages for multiple non-disclosure violations of the FCBA, Chase itself can control the extent of its future liability by simply adhering to the requirements imposed by Congress.

For these reasons, we hold that Lyon's recovery of statutory damages resulting from Chase's multiple violations of the FCBA is not limited to a single statutory penalty under § 1640(g). We therefore reverse the magistrate judge's order as to statutory damages and remand for further proceedings. While Chase admitted violating the FCBA as alleged in the complaint, we note that Chase has not admitted the number of violations or the factual basis for its violations. These issues will have to be addressed on remand.

### E.   Attorneys' Fees under the FCBA

**[19]** Pursuant to 15 U.S.C. § 1640(a)(3), "in the case of any successful action to enforce" a creditor's liability under the FCBA, the plaintiff is also entitled to "a reasonable attorney's fee as determined by the court." There was no dispute— even before this appeal—that Lyon's FCBA claims were successful and that he is entitled to recover reasonable attorneys' fees under § 1640(a)(3). An award of attorneys' fees under § 1640(a)(3) is properly calculated through a lodestar analysis, in which the court determines a reasonable rate and multiplies it by the number of attorney hours reasonably expended on the case. *See generally Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028–29 (9th Cir. 2000).

**[20]** While accepting Lyon's proposed rate as reasonable, the magistrate judge determined that Lyon could only recover fees for specific aspects of his FCBA claims. Following our decision here, however, Lyon has succeeded on all aspects of his FCBA claims pursued up to this point in the litigation. Accordingly, Lyon is entitled to recover reasonable attorneys' fees incurred for all work undertaken in pursuit of his FCBA claims up to now, including those fees incurred as part of this appeal. We therefore reverse the magistrate judge's order and remand the issue of attorneys' fees for further proceedings. Although Lyon has now conceded that he may not recover fees incurred during the trial—which involved only the unsuccessful defamation claim—he is entitled to recover a portion of those fees incurred for pre-trial tasks that related to both his FCBA and defamation claims. *See Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983); *Traditional Cat Ass'n v. Gilbreath*, 340 F.3d 829, 833–35 (9th Cir. 2003).[11] The fee award may be reduced if Lyon's renewed request is supported only by block-billing statements of the relevant activity, although a fee award cannot be denied on this basis. *See Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1128–29 (9th Cir. 2008); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948–49 (9th Cir. 2007). These issues will have to be addressed on remand.

## III.   CONCLUSION

For the foregoing reasons, we **REVERSE** and **REMAND** this case for further proceedings.

---

[11]Although it may be difficult to apportion recoverable attorney work and non-recoverable attorney work, the inherent difficulty of this relatedness analysis is not a basis upon which a trial court may deny an award of attorneys' fees. *See Gilbreath*, 340 F.3d at 834–35; *Gracie v. Gracie,* 217 F.3d 1060, 1050 (9th Cir. 2000) ("We hold, however, that the impossibility of making an *exact* apportionment does not relieve the district court of its duty to make *some* attempt to adjust the fee award in an effort to reflect an apportionment. In other words, apportionment or an attempt at apportionment is required unless the court finds the claims are so inextricably intertwined that even an estimated adjustment would be meaningless.").