**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DONALD WELCH; ANTHONY DUK;
AARON BITZER,
    *Plaintiffs-Appellants*,

    v.

EDMUND G. BROWN, JR., Governor
of the State of California, in his
official capacity; DENISE BROWN,
Case Manager, Director of
Consumer Affairs, in her official
capacity; HARRY DOUGLAS; JULIA
JOHNSON; SARITA KOHLI; RENEE
LONNER; KAREN PINES; CHRISTINA
WONG, in their official capacities as
members of the California Board of
Behavioral Sciences; SHARON
LEVINE; MICHAEL BISHOP;
REGINALD LOW; DENISE PINES;
SILVIA DIEGO; DEV GNANADEV;
JANET SALOMONSON; GERRIE
SCHIPSKE; DAVID SERRANO SEWELL;
BARBARA YAROSLAVSKY; ANNA M.
CABALLERO; CHRISTINE
WIETLISBACH; PATRICIA LOCK-
DAWSON; SAMARA ASHLEY, in their
official capacities as members of
The Medical Board of California,
    *Defendants-Appellees.*

No. 15-16598

D.C. No.
2:12-cv-02484-
WBS-KJN

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted June 22, 2016
San Francisco, California

Filed August 23, 2016
Amended October 3, 2016

Before:  Alex Kozinski, Susan P. Graber,
and Morgan B. Christen, Circuit Judges.

Order;
Opinion by Judge Graber

## SUMMARY[*]

### Civil Rights

The panel amended the opinion filed on August 23, 2016; affirmed the district court's judgment on the pleadings, entered in favor of the State of California, on remand from a preliminary injunction appeal, in an action challenging California's Senate Bill 1172, which prohibits state-licensed mental health providers from engaging in "sexual orientation change efforts" with minor patients; denied the petition for panel rehearing; and denied on behalf of the court the petition for panel rehearing en banc.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that plaintiffs' claims under the Free Exercise and Establishment Clauses of the First Amendment failed. The panel rejected plaintiffs' Establishment Clause claim that Senate Bill 1172 excessively entangled the State with religion. The panel held that the scope of the law regulates conduct only within the confines of the counselor-client relationship.

The panel rejected plaintiffs' assertion that Senate Bill 1172 has the principal or primary effect of advancing or inhibiting religion because some minors who seek sexual orientation change efforts have religious motivations. The panel held that the prohibition against sexual change efforts applies without regard to the nature of the minor's motivation for seeking treatment. The panel concluded that the operative provisions of SB 1172 were fully consistent with the secular purpose of preventing harm to minors and the evidence fell far short of demonstrating that the primary intended effect of SB 1172 was to inhibit religion. The panel further concluded that although the evidence considered by the legislature noted that some persons seek sexual orientation change efforts for religious reasons, the documents also stressed that persons seek change efforts for many secular reasons. The panel held that an informed and reasonable observer would conclude that the primary effect of SB 1172 is not the inhibition (or endorsement) of religion. For substantially the same reasons, the panel rejected plaintiffs' argument that under the Free Exercise Clause, SB 1172 was not neutral.

Finally, the panel held that plaintiffs' privacy claim was foreclosed by *Pickup v. Brown*, 740 F.3d 1208 (9th Cir.

2014), which held that substantive due process rights do not extend to the choice of type of treatment or of a particular health care provider.

---

**COUNSEL**

Kevin T. Snider (argued), Michael J. Peffer, and Matthew B. McReynolds, Pacific Justice Institute, Sacramento, California, for Plaintiffs-Appellants.

Alexandra Robert Gordon (argued), Deputy Attorney General; Tamar Pachter, Supervising Deputy Attorney General; Douglas J. Woods, Senior Assistant Attorney General; Kamala D. Harris, Attorney General; Office of the Attorney General, San Francisco, California; for Defendants-Appellees.

William D. Temko, Katherine M. Forster, and Thomas Paul Clancy, Munger, Tolles & Olson LLP, Los Angeles, California; Shannon P. Minter and Christopher F. Stoll, National Center for Lesbian Rights, San Francisco, California; for Amicus Curiae Equality California.

## ORDER

The opinion filed August 23, 2016, and published at 2016 WL 4437617, is amended by the opinion filed concurrently with this order.

With this amendment, the panel has voted to deny Appellants' petition for panel rehearing and petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on it.

Appellants' petition for panel rehearing and petition for rehearing en banc are **DENIED**. No further petitions for panel rehearing or petitions for rehearing en banc may be filed.

## OPINION

GRABER, Circuit Judge:

Once again, we consider facial constitutional challenges to California's law prohibiting state-licensed mental health providers from engaging in "sexual orientation change efforts' ("SOCE") with minor patients. The law is known as Senate Bill 1172, or SB 1172, and is codified in California's Business and Professions Code sections 865, 865.1, and 865.2. Plaintiffs are two state-licensed mental health providers and one aspiring state-licensed mental health provider who seek to engage in SOCE with minor patients.

Defendants are the Governor of California and other state officials, to whom we refer collectively as "the State."

Our earlier opinion in *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014), contains further background information. In that appeal, we undertook plenary review of the claims raised at the preliminary injunction stage. We held that "SB 1172, as a regulation of professional conduct, does not violate the free speech rights of SOCE practitioners or minor patients, is neither vague nor overbroad, and does not violate parents' fundamental rights"; and we remanded for further proceedings on any additional claims. *Id.* at 1222. On remand, Plaintiffs claimed that SB 1172 violates the Free Exercise and Establishment Clauses of the First Amendment and that SB 1172 violates the privacy rights of their minor clients. The district court granted judgment on the pleadings to the State. Reviewing de novo, *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011), we affirm.

Plaintiffs' claims under the Religion Clauses[1] fail. We earlier held that SB 1172 survives rational basis review because "SB 1172 is rationally related to the legitimate government interest of protecting the well-being of minors." *Pickup*, 740 F.3d at 1232. But Plaintiffs argue that, under the Religion Clauses, we must apply strict scrutiny. We are not persuaded.

---

[1] "The First Amendment provides in pertinent part that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.' The Free Exercise and Establishment Clauses apply to the States through the Due Process Clause of the Fourteenth Amendment." *California v. Grace Brethren Church*, 457 U.S. 393, 396 n.1 (1982).

Plaintiffs first argue that, under the Establishment Clause, SB 1172 excessively entangles the State with religion. Their argument rests on a misconception of the scope of SB 1172. For example, Plaintiffs assert that Dr. Welch may not "offer certain prayers or quote certain Scriptures to young people" even "while working as a minister for Skyline Church" within "the four walls of the church . . ., while engaging in those religious activities." The premise of this Establishment Clause argument is mistaken, and the argument fails, because SB 1172 regulates conduct only *within the confines of the counselor-client relationship*.

We held as much in our earlier opinion: "As we have explained, SB 1172 regulates only (1) therapeutic treatment, not expressive speech, by (2) licensed mental health professionals acting *within the confines of the counselor-client relationship*." *Id.* at 1229–30 (emphasis added). That conclusion flows primarily from the text of the law. For example, SB 1172 prohibits SOCE "with a *patient* under 18 years of age." Cal. Bus. & Prof. Code § 865.1 (emphasis added). Legislative history, too, strongly suggests that the law was aimed at practices that occur in the course of acting as a licensed professional.[2] Finally, the doctrine of constitutional avoidance requires us not to interpret SB 1172 as applying in the manner suggested by Plaintiffs. *See, e.g.*, *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. &*

---

[2] The record contains legislative reports submitted by Plaintiffs. Those reports note repeatedly that "the intent of this bill is to limit deceptive *therapies* that are harmful to minors by mental health providers." (Emphasis added.) Similarly, some reports describe the "[p]urpose of this bill" as "protections for youths [from] dangerous so-called *therapies* that aim to change a person's sexual orientation." (Emphasis added.) Nothing in the legislative history suggests that SB 1172 aimed to regulate ordinary religious conduct.

*Constr. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of [the legislature].").

Notably, Plaintiffs are in no practical danger of enforcement outside the confines of the counselor-client relationship. The State repeatedly and expressly has disavowed Plaintiffs' expansive interpretation of the law. For example, in its brief to this court, the State asserts that "SB 1172 does not apply to members of the clergy who are acting in their roles as clergy or pastoral counselors and providing religious counseling to congregants." At oral argument, the State's lawyer reiterated that the law "does not actually apply to members of the clergy or religious counselors who are acting in their pastoral or religious capacity." Oral Argument at 15:12–15:22, *available at* http://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000009871. Similarly, the State's lawyer emphasized that the law "exempts pastoral counselors, clergy, etc., as long as they don't hold themselves out as operating pursuant to their license." *Id.* at 15:32–15:41. In sum, because SB 1172 does not regulate conduct outside the scope of the counselor-client relationship, the law does not excessively entangle the State with religion.

Plaintiffs next argue that, under the Establishment Clause, SB 1172 "has the principal or primary effect of advancing or inhibiting religion." *Am. Family Ass'n, Inc. v. City of San Francisco*, 277 F.3d 1114, 1122 (9th Cir. 2002). "We conduct this inquiry from the perspective of a 'reasonable observer' who is both informed and reasonable." *Id.* (quoting *Kreisner v. City of San Diego*, 1 F.3d 775, 784 (9th Cir. 1993)).

"The legislature's stated purpose in enacting SB 1172 was to 'protect the physical and psychological well-being of minors, including lesbian, gay, bisexual, and transgender youth, and to protect its minors against exposure to serious harms caused by sexual orientation change efforts.' 2012 Cal. Legis. Serv. ch. 835, § 1(n)." *Pickup*, 740 F.3d at 1223 (brackets omitted). The operative provisions of SB 1172 are fully consistent with that secular purpose. The law regulates the conduct of state-licensed mental health providers *only*; the conduct of all other persons, such as religious leaders not acting as state-licensed mental health providers, is unaffected. As explained in detail above, even the conduct of state-licensed mental health providers is regulated *only* within the confines of the counselor-client relationship; in all other areas of life, such as religious practices, the law simply does not apply.

The prohibition against SOCE applies without regard to the nature of the minor's motivations for seeking treatment. That is, whether or not the minor has a religious motivation, SB 1172 prohibits SOCE by state-licensed mental health providers. And, of course, the law leaves open many alternative paths. Minors who seek to change their sexual orientation—for religious or secular reasons—are free to do so on their own and with the help of friends, family, and religious leaders. If they prefer to obtain such assistance from a state-licensed mental health provider acting within the confines of a counselor-client relationship, they can do so when they turn 18.

Plaintiffs nevertheless argue that SB 1172 has the effect of inhibiting religion because some minors who seek SOCE have religious motivations. We acknowledge that a law aimed *only* at persons with religious motivations may raise

constitutional concerns.  *See, e.g.*, *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) (invalidating under the Free Exercise Clause the prohibition of ritual animal slaughter, tailored to reach only religiously motivated conduct); *Cent. Rabbinical Congress of U.S. & Can. v. N.Y. City Dep't of Health & Mental Hygiene*, 763 F.3d 183 (2d Cir. 2014) (holding that strict scrutiny applies under the Free Exercise Clause to health regulations targeting metzitzah b'peh, an Orthodox Jewish ritual during circumcision).  But SB 1172 falls well outside that category.

The bill's text and its legislative history make clear that the legislature understood the problem of SOCE to encompass not only those who seek SOCE for religious reasons, but also those who do so for secular reasons of social stigma, family rejection, and societal intolerance for sexual minorities.  For example, in its express legislative findings, the legislature quoted a policy statement that found that "*[s]ocial stigmatization* of lesbian, gay and bisexual people is widespread and is a primary motivating factor in leading some people to seek sexual orientation changes."  2012 Cal. Legis. Serv. ch. 835, § 1(h) (emphasis added); *see also id.* § 1(m) ("Minors who experience *family rejection* based on their sexual orientation face especially serious health risks." (emphasis added)).  The documents in the legislative history recognized that religion is a motivating factor for some persons who seek to change their sexual orientation; but it also repeatedly listed "social stigmatization," "unfavorable and intolerant attitudes of the society," and "family rejection" as common causes of distress that might motivate people to seek counseling.

The legislative findings of SB 1172 cited a 2009 report from a Task Force convened by the American Psychological

Association ("APA"). 2012 Cal. Legis. Serv. ch. 835, § 1(b). Plaintiffs note that the APA Task Force's report concluded that "the population that undergoes SOCE tends to have strongly conservative religious views that lead them to seek to change their sexual orientation." Extrapolating from that statement, Plaintiffs characterize the report as focusing *exclusively* on persons who seek SOCE for religious reasons. Plaintiffs further conclude that the legislature, too, focused exclusively on persons who seek SOCE for religious reasons.

We disagree. The evidence falls far short of demonstrating that the primary intended effect of SB 1172 was to inhibit religion. The legislative findings cite—in addition to the APA Task Force report—many other sources, including a 2009 resolution by the APA; a 2000 position statement by the American Psychiatric Association; a position statement by the American School Counselor Association; a 1993 article by the American Academy of Pediatrics; a 1994 report by the American Medical Association Council on Scientific Affairs; a 1997 policy statement by the National Association of Social Workers; a 1999 position statement by the American Counseling Association Governing Council; a 2012 position statement by the American Psychoanalytic Association; a 2012 article by the American Academy of Child and Adolescent Psychiatry; and a 2012 statement by the Pan American Health Organization. 2012 Cal. Legis. Serv. ch. 835, § 1(c)–(*l*). Those additional sources do not characterize the main motivation of persons seeking SOCE as being religious.

Even viewing the APA Task Force's report in isolation does not support a conclusion that only those with religious views sought SOCE. Although the report concluded that those who seek SOCE "tend" to have strong religious views,

the report is replete with references to non-religious motivations, such as social stigma and the desire to live in accordance with "personal" values. The report noted that "sexual stigma, manifested as prejudice and discrimination directed at non-heterosexual sexual orientations and identities, is a major source of stress for sexual minorities," which the report termed "minority stress." "Homosexuality and bisexuality are stigmatized, and this stigma can have a variety of negative consequences (e.g., minority stress) throughout the life span." "Some individuals choose to live their lives in accordance with *personal or* religious values . . . ." (Emphasis added.) The following illustrates the report's general approach:

> [E]xperiences of felt stigma—such as self-stigma, shame, isolation and rejection from relationships and valued communities, lack of emotional support and accurate information, and conflicts between multiple identities and between values and attractions—played a role in creating distress in individuals. Many religious individuals desired to live their lives in a manner consistent with their values . . . .

That passage first identifies *many* non-religious sources of distress that might cause a person to seek counseling and only then notes that, for many religious individuals, an *additional* source of distress may be present.

In sum, although the scientific evidence considered by the legislature noted that some persons seek SOCE for religious reasons, the documents also stressed that persons seek SOCE for many secular reasons. Accordingly, an informed and

reasonable observer would conclude that the "primary effect" of SB 1172 is not the inhibition (or endorsement) of religion.

Plaintiffs next argue that, under the Free Exercise Clause, SB 1172 is not "neutral." *Church of Lukumi*, 508 U.S. at 531. This argument fails for substantially the same reasons as discussed above. *See also King v. Governor of N.J.*, 767 F.3d 216, 241–43 (3d Cir. 2014) (rejecting the plaintiffs' free exercise challenge to New Jersey's law prohibiting state-licensed counselors from engaging in SOCE with minors), *cert. denied*, 135 S. Ct. 2048 (2015).

"[I]f the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral . . . ." *Church of Lukumi*, 508 U.S. at 533. The object of SB 1172 is the prevention of harm to minors, regardless of the motivations for seeking SOCE. As we have explained, many persons seek SOCE for secular reasons. Moreover, even if we assume that persons with certain religious beliefs are more likely to seek SOCE, the

> Free Exercise Clause is not violated even if a particular group, motivated by religion, may be more likely to engage in the proscribed conduct. *See Reynolds v. United States*, 98 U.S. 145, 166–67 (1878) (upholding a ban on polygamy despite the fact that polygamy was practiced primarily by members of the Mormon Church); *cf. United States v. O'Brien*, 391 U.S. 367, 378–86 (1968) (rejecting a First Amendment challenge to a statutory prohibition of the destruction of draft cards even though most violators likely would be opponents of war).

*Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1077 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 2433 (2016).

Finally, Plaintiffs' privacy claim fails. Plaintiffs characterize their claim as relying on the principles found in cases such as *Lawrence v. Texas*, 539 U.S. 558 (2003). *Lawrence* rests on a substantive due process analysis. *Id.* at 564. Accordingly, we understand Plaintiffs to be asserting that their clients have a substantive due process right to receive a particular form of treatment—SOCE—from a particular class of persons—mental health providers licensed by the State of California. *See Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) ("[W]e have required in substantive-due-process cases a 'careful description' of the asserted fundamental liberty interest." (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993))). Our previous opinion forecloses that argument. *See Pickup*, 740 F.3d at 1235–36 ("[W]e have held that 'substantive due process rights do not extend to the choice of type of treatment or of a particular health care provider.'" (quoting *Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1050 (9th Cir. 2000))).

**AFFIRMED.**